UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

JERRY V. HILLIS, )
 )
      Plaintiff, )
 )
vs. ) CIVIL ACTION No. CV-96-S-0645-NE
 )
J & J SOUTH CENTRAL, etc.; )
and GEORGIA PACIFIC CORP., )
 )
      Defendants. )

ENTERED
APR 4 1997

## MEMORANDUM OPINION

    This action is before the court on plaintiff's amended motion to compel and for sanctions. Oral arguments were heard during this court's March 26, 1997 motion docket. Upon consideration of the motion, pleadings, briefs, arguments, and *in camera* review of the contested document, this court concludes plaintiff's motion is due to be granted in part and denied in part.

    Plaintiff claims his employment was terminated in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101. On March 3, 1997, he moved to compel the production of computer notes generated by Georgia Pacific claims supervisor Tammy Woody. Defendants oppose the production, alleging the notes are protected by the attorney-client privilege and the work product doctrine because they were prepared during the pendency of plaintiff's prior state court workers' compensation suit, a subsequent state court retaliatory discharge suit, and this action.

    On March 24, 1997, this court ordered defendants' counsel to present the contested documents for *in camera* inspection. A careful review established that all entries reflecting communications between Ms. Woody and defendants' counsel, and

thereby protected by the attorney-client privilege, are clearly identifiable and, thus, could be redacted. Therefore, the pivotal issue which must be addressed is whether those remaining, unredacted portions of Ms. Woody's computer notes are protected by the work product doctrine.

Rule 26(b)(3) of the *Federal Rules of Civil Procedure* creates a qualified immunity for documents prepared in anticipation of litigation; *i.e.*,

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... <u>only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means</u>.
> [Emphasis added.]

The rule has several purposes, including the establishment of a zone of privacy for litigation planning and tactics, and, the prevention of "piggybacking" by one party on an adversary's trial preparation. *See, e.g., United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975); *Hickman v. Taylor,* 329 U.S. 495, 516, 67 S.Ct. 385, 396, 91 L.Ed. 451 (1947)(Jackson, J., concurring)(the work product rule is intended to insure that one side does not "perform its functions ... on wits borrowed from the adversary").

A district court is vested with wide discretion in determining whether circumstances justify the production of work product materials for inspection. *See Georgine v. Amchem Products, Inc.,*

1994 WL 502475 *2 (E.D. Pa. Sept. 2, 1994); *United States v. Chatham City Corp.*, 72 F.R.D. 640 (S.D. Ga. 1976).

The first indication that litigation in any forum was contemplated by Mr. Hillis following his work-related injury appears in an entry dated August 4, 1992 ("8-4-92"), where Ms. Woody recorded that she had received a letter from a Huntsville, Alabama attorney named Jerry Baker. Accordingly, all entries prior to that date are not protected by the work product doctrine, and are discoverable by plaintiff. Copies are appended hereto.

The notes prepared by Tammy Woody from August 4, 1992 to date, however, are another matter. They clearly were made in anticipation of (indeed, during the pendency of state and federal court) litigation. As such, they are not subject to disclosure without a showing by Mr. Hillis of a substantial need for the materials in the preparation of his case, <u>and</u>, an inability to obtain the substantial equivalent of such materials by other means, without undue hardship.

With regard to the first prong of such showing, plaintiff claimed during oral argument that the computer notes are necessary: (1) to establish the extent of any contacts between defendants' employees and Mr. Hillis' principal, treating physician (a Dr. Savage); and (2) to possibly impeach the testimony of defendants' employees (*e.g.*, Tammy Woody, Sandra Mobley, and Lucreacia Walker Points) regarding the number and nature of contacts between those employees and Dr. Savage, and, the information those employees

3

received concerning the extent of plaintiff's disability and ability to return to work in any capacity.

Shifting then to the second prong of plaintiff's required showing, defendants contend that Mr. Hillis obtained the substantial equivalent of the information he seeks through the deposition of Tammy Woody. The discovery of work product material should be denied if the party seeking discovery is able to obtain the information desired by other methods of discovery, such as by taking the deposition of witnesses. See *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467 (11th Cir. 1984); *In re International Systems & Controls Corp.*, 693 F.2d 1235, 1240-41 (5th Cir. 1982); *Chatham*, 72 F.R.D. at 643. In *Hohenwater v. Roberts Pharmaceutical Corp.*, 152 F.R.D. 513 (D.S.C. 1994), the court found no substantial need where plaintiffs were able to depose all persons who participated in the preparation of the contested document.

Plaintiff deposed Tammy Woody on February 20, 1997. She held, and referred to, the notes in question while responding to questions by plaintiff's counsel concerning the dates of her contacts with Dr. Savage's office, and the information she thus obtained. A comparison on her deposition testimony with the typewritten entries establishes two things: (1) her verbal answers did not in all instances convey the full substance of that which apparently had been communicated to her by Dr. Savage (or his office personnel); and (2) some entries which appear to contain information received from Dr. Savage were not disclosed by Ms. Woody during deposition. In both instances, plaintiff has

4

demonstrated that he is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means. Accordingly, all entries in the contested document reflecting contacts between Ms. Woody and Dr. Savage's office are due to be produced. Copies are appended hereto.

The remainder of the materials produced for *in camera* inspection are protected from disclosure, and plaintiff's motion to compel will be denied to that extent. The present circumstances, in which plaintiff's motion is granted in part and denied in part, do not warrant sanctions against defendants.

An order consistent with this memorandum opinion will issue contemporaneously herewith.

DONE this 4th day of April, 1997.

_____
United States District Judge

5

```
GF#:       AL 91 00020         Time Loss: Yes
Employee:  JERRY HILLIS
Location:  HUNTSVILLE, AL 567-384
D/I: 05-02-91  SSN: 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   DOB: age 41   Phone: 3793306
```

**ACCIDENT DESCRIPTION:**

Clmt complained of a stiff back on 5/2/91, (this is actually the 5/1/91 shift as clmt works graveyard) When he returned to work for his 5/2/91, he againcomplained of continuing stiffness in his back. He could not immediately think of when he may have injuried his back, only thing out of the ordinary which occurred was on 5/2/91, a small unit of Colonial fell off a pallet, he had to manualyreload the pallet. Does not recall any specific time when he experienced a sharpor sudden pain in his back, it came on gradually.

**LOCATION CONTACT:**

S/W Sandra on 5/21/91. Clmt was unable to give us a specific accident, back began aching/was stiff during end of clmt's shift on 5/1-2/91. He did have to manually reload a pallet after they fell. He worked 1 more shift, called in sick with pain back on 5/3/91, sought treatment by his own with Dr Merriman, hisfamily physican. Sandra spoke to him on 5/6/91, advised him he would have to seeco. Dr. Walley. Taken off work with lumbar strain. Dr released clmt to rtw on light duty 5/13/19, Sandra brought him back painting(approved by dr) at full wages, clmt has returned to his previous job as a Loader as of 5/20/91. Sandra questioned clmt about injury, pain came on gradually night he had to reload pallet, it started hurting approx 30 mins or so after he finished loading the pallet. Clmt's wife is currently receiving WC with back injury, they are represented by counsel and Sandra believes the case to be litigated. Advised Sandra, under AL law, "accident" beingdescribed by clmt would be compensable. Clmt sustained an onset of pain after being involved in strenous activity which was out of the ordinary. We will not pay for unaruthorized medical care with Dr Merriman. Will cover clmt's TTD for that time, if our co dr had released him to return to work immediately I would question paying any TTD, however our dr kept him offwork, therefore I think we need to go ahead and pick up the TTD from 5/3/91 to 5/12/91.

**CLAIMANT CONTACT:**

Clmt has rtw, left message with Sandra for him to call me ASAP to discuss case.

**WITNESSES:**

None

**INJURY DESCRIPTION/MEDICAL TREATMENT:**

Lumbar strain, Under care of Dr William Walley with Corporate health Center, 1963 Memorial Pkwy, Huntsville, AL 35801. Being treated conservatively withPT and meds.

**PAST MEDICAL TREATMENT:**

CLLmt has prior low back injury from accident on 1/17/89, Sandra is sending records.

**OTHER INVESTIGATIONS:**

No 3rd party involvement at this time, clmt was injuried lifting material at time of injury.

**OVERALL EVALUATION:**

Clmt described a compensable injury, described onset of pain follwoing unusually heavy lifting for his job. This would be compensable under AL law.

**ACTION PLAN:**

Owe clmt 1 wk TTD at CR of $245.61 based on AWW of $368.40. This is forperiod of 05/06/91-05/12/91. He is not due waiting period of 5/3/91-5/5/91 unless disabled 3 weeks. Filed WCC 2 and 3 with state. Have asked Sandra to forward all medicals including that of Dr Merriman, will need to issue formal denial so GH will pick up.

**HIGHLIGHTS**

9-9-96 Reviewed file. I have received office notes from dr Savage dated 7-1-96. X-rays were made and they reveal bonegrafts are in good position. He is to stay active. He can do regular work. The file was settled and the medical was left open. He is to f/u in one year. Will

12-2-91 A message was left on my desk while at lunch indicating that the clmt wanted his check mailed to him instead of the location. I have checked with the Commission and they said that we could mail it to the location. I spoke with Jewell. I have tried to reach the claimant but there is no answer. tsw.

12-2-91 We have also received the investigative report and they did not find the clmt doing anything. He pumped some gas and drove around. tsw.

12-2-91 Reviewed file. Dr. Miller has referred the clmt to dr. Tejanand Mulpur a neurologist. The claimant has a normal neurological examand an MRI was performed. The EMG report indicated normal sensory nerve, normal motor nerve, and normal F-response. Findings are suggestive of a mild chronic S-1 raduculopathy. We do not have the MRI results. I will write to the dr. for a determination of where we are going now. tsw

11-22-91 Sandy called. the clmt came in today and said he wanted to cancel his uniforms because he is probably going to have surgery. It would appear that he does not intend on coming back to work. There is not a dr. that has mentiond surgery. tsw.

11-21-91 Reviewed file. Clmt was seen by dr. Miller on 11-15-91. He state that he has lower back and right leg pain. He does not know of a neurological deficit at this time but he would like to have a repeat MRI done as well as electrodianostic studies of both legs as he seems to have mor pain on the right. He is not able to work, will be seen back in one week. Will review again in 2 weeks. tsw.

11-18-91 Sandy called and she wants the checks coming to the location. I have changed the address. tsw.

11-12-91 I called dr. Wally's office. The clmt was seen on 11-6-91. he is disabled for 2 more weeks. Dx lumbosacral strain. He has been referred to dr.Miller for a second opinion. He has a f/u appt on 11-20-91. Will diary file for that time and review med. tsw.

11-4-91 Called Suzanne at Combined. Gave her the info. I only want her to do an activity check. Shw will get on asap. tsw.

11-4-91 Sandra called. CLmt did see his own dr. before seeing Goldblack. Sandra has called Goldblack and the clmt is still disabled. We will go ahead and pay him for 10-31-91 thru 11-6-91 and wait for the results of his 11-6-91 office visit. tsw.

11-4-91 Sandra called. The clmt went tothe ER on 10-28-91 at night. He went in complaining of back pain. The ER dr. disabled him 10-29 and 10-30-91. He was supposed to RTW on 10-31-91. However, he did not RTW but instead went to his own dr. who has disabled him for 11-4-91 thru 11-8-91. They do not know the name of this dr. We will not pay for this time off because this dr. is not authorized. We will not pay his bills either. Sandra wants us to have an investigator watch the clmt. They do not really know of anything he may be doing but they want to be sure. Sandy has given me a desc. white male, 5'8", light brown hair, curly and short, very bowlegged and walks humped over. Bad complexion, and red eyes, looks aged. He is married and has 3 children. Wife's

name is Thelma but she goes by Gail. He drives red pick-up truck.
Address 971 Coleman Road, New Market, AL 35761, 205-379-2960. Cmt has
an appt with DR. WAlly, the authorized on 11-6-91. I called the clmt
to see what is going on. He said that he saw a dr. Goldblock on
10-31-91. He is Dr. Wally's partner, Dr. WAlly was not in. He is to
remain off work until seen 11-6-91. He said Sandra should have a
disability slip. I called Sandra and she said that Goldblock is Dr.
WAlly's assistant. She will check into this further and will call me
back. I will not do anything until I hear from her further. tsw.

10-29-91 Sandra called. Clmt is out today but she does not know why.
She has scheduled an appointment with Dr. Miller for 11-15-91. Dr.
Wally called Sandra today and said that the may consider leaving him
out of work if he keeps complaining. He is also abusing the drugs
prescribed by DR Wally. Dr. Wally is not prescriving him anymore.
Sandra will keep me updated. tsw.

10-24-91 Sandra called. The clmt is supposed to be taking pt. His
shift ends at 3PM and the plant wants him to go to pt then but he says
he is too tired then. He wants to go during his shift. DO we have to
pay ttd or tpd for this and can we make him take pt at end of day?

tsw. 10-25-91 called
Sandra. Not in-to return my call. tsw.

10-21-91 Reviewed file. Sandra Mobley called on 10-18-91. Clmt is
still working light duty for 2 months, no lifting over 25 lbs, no
bending or stooping. She states that he continues to complain with his
back. He had an MRI on 9-26-91 and he may have a bulge but this
shouldnt cause him any problems. The location may want to get a second
opinion and they want me to send them a letter indicating that it was
my idea and not theirs. I will send the letter to sandra today. tsw.

09-26-91 tsw reviewed file. clmt is 41 years old. he has been
employed as a loader a for 4 years. he indacated he injured his back
when he lifted small units and put them on core pallets. he was
diagnoised with a lumbar strain. he was treated by dr. walley. clmt
rtw 5-13-91. claim was found to be compensable and ttd was paid and
forms filed. when the cmlt originally reported that his back hurt, he
could not state a specific incident but later said he was lifting
units. apparently the clmt continues to complain of back pain. he is
not adhering to the restrictions placed upon him by the dr. the
location originally wanted us to do a further investigation but later
called russ and cancelled this because the clmt is still working and
they do not want to rock the boat. will diary file for 30 days and see
if any further action is needed, if clmt still complains of back pain
and if he is still working. tsw.

I have rec'd phone call From Sandy at J & J South Central. She has
indicated that the clmt has been having problems and is saying that it
is all related to the Feb inj. Clmt informed her of this on 9-6-91.
The location wanted us to send an investigator out on this claim. I
had phoned Gay and Taylor on 9-25-91 to set up, then Sandy phoned back
and changed her mind. She stated that the clmt has been thru drug
rehab and the dr feels that his current problem is more psych than
physical. Sandy states that she does not want rodk the boat and maybe

an investigation is not good at this time. Apparently the clmt ...
violated all of the restrictions that the dr had placed on him earlier
in the year, which has made his back hurt continually. The clmt has
now been written up for these violations. I will f/u again as needed.
Also will go ahead and give case to TSW. Also important to note, the
clmt is not losing time at this point./wrh/9-26-91

Reviewed clm and all meds appear to be paid. I will f/u w/closure and
file final wcc3. /wrh/9-12-91

07/05/91, Reviewed on dairy. Have not yet received the medical billings
from loc. Diary for review in 30 dys for closure or additional request
to location for information. DaM

continue to monitor medical and will review file again on 10-9-96. tsw.

7-8-96 Reviewed file. The ee is to see dr Savage again this month. He had a CT scan on 2-27-96 and this was negative for disk herniation or spinal stenosis. He can do regular work. The file was settled and medical was left open. The ee is no longer an employee of J & J. Will continue to monitor and review file again on 8-2-96. tsw.

5-24-96 Reviewed file. The file was settled for $40K on 6-8-94. Medical was left open. The ee continues to treat with Savage. He was last examined on 3-11-96. He will be seen again in 4 months or around 7-96. Will continue to monitor medical for a final discharge. Will review file again on 7-8-96. tsw

4-10-96 Reviewed file. The ee was last examined on 3-11-96. He can do regular work. The CT scan done on 2-27-96 was negative of the lumbar spine for disc herniation or canal stenosis. He will be seen again in 7-96. Lucrecia states that she told him that he can send him mileage in on his own to avoid him having to come to the plant and try to get his job back. Will continue to monitor and will rediary file for 5-24-96. tsw.

3-12-96 Lucrecia called today and said that the ee came in today with a release for regular work and she wanted to know what we should do about it and I told her that as far as wc is concerned we should do nothing because we settled the claim and we have to continue to pay medical. I told her that he does not have to turn his mileage into her he can mail it to me. She said that she would let Jim Ellison know. tsw.

2-29-96 Reviewed file. The ee is still treating with Savage. The ee just had an EMG, Myleo/CT done this week. He was having giving way of his knee and pain down his leg. If he has a knee injury this will not be covered. Only the low back. This case has been settled and medical was left open. Will continue to monitor. Will rediary file for 4-10-96. tsw.

2-22-96 Received fax from Wylene and called info into Bonnie at UHC. She does not think they will recommend all 4 tests in one day without stopping to look at the result of the previous one. They are scheduled for 2-27-96. They will let me know the recommendation. tsw.

2-21-96 Wylene called today and the ee was seen today with complaints of back pain and radiating pain down his right leg and his knee giving way. The dr wants to do another myleo/ct and nerve conduction

studies/EMG on 2-28-96. I told her that this ____ ____ precerted. She will fax the office notes to me today and I will call UHC upon receipt. tsw.

7-15-95 Reviewed file. The claim was settled and medical was left open. The ee has tried to get his job back at J & J. But was not successful. I believe he has filed a wrongful discharge suit. The last office notes I have are from 5-29-95 from dr Savage. He appears to have a solid fusion. He is to walk alot and stay active. He can do medium duty work. He is taking salsalate and elavil. He is to return in one year. I have just received another rx bill from Buy Wise so I will have to keep the file open to monitor the bills. ▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Will review file again on 8-29-95. tsw.

4-19-95 Reviewed file. This case was settled for $40K. Medical was left open. The ee came to Sandy Mobley about a month ago and wanted his job back. They will not allow him to return to work. We suspected a lawsuit but I have not heard that we received one. The last office notes I have are from 3-1-95. He is to stay active, walk and use good body mechanics. He can do regular work. He will be examined again in

4 months or 3-1-95. to monitor and will review file again on 6-1-95. tsw.

3-6-95 Lori from Dr Savage's office called. The ee was examined on 3-1-95. He can do regular work. He is to stay active and use good body mechanics. He will be seen again in 4 months. tsw.

3-1-95 Sandy called today and said that the ee came in with a release for work. No restrictions were indicated. The ee told him that the dr said for him to do what he could that the ee knew what his restrictions were. She told him that he was terminated on 5-5-93 for continued inability to do any job in the plant. He filed suit for wrongful discharge and we won this. We settled the WC claim for $40K and this was approved on 5-16-94. I am sending Sandy a copy of the settlement today. She has put a call into Jim Ellison and he is on vacation. She will keep me posted. Will review file again on 4-18-95. tsw.

1-13-95 Reviewed file. Received office notes from 1-4-95. The ee is 7.5 months post op. He has improved. X-rays reveal fusion to be healing and titanium cages in good position. Neurologically ok. All reflexes equal. Recommends PT and exercising. Can do light duty work. No lifting over 30 lbs. F/u in 2 months. We have settled the indemnity portion of this claim. And now we are only paying medical. Will continue to monitor and will review file again on 3-1-95. tsw.

1-9-95 Wylene from dr Savage's office called. The ee will need PT and they will send him to Sports Therapy and Rehab in Huntsville because it is closer. He will need this 2x per week for 3 weeks. I have authorized this. tsw.

12-1-94 Reviewed file. I have received the office notes from dr Savage for 11-7-94. He has continued to have pain. X-rays reveal grafts to be in a good position and titanium cages in good position. He complains of muscle spasms in the right lumbar region and right buttocks region after he works and certain movements. The dr does not think he would damage anything by being active. Neurologically ok. He is to walk 4 to 5 miles a day. Return to light duty work with no lifting over 10 lbs. He is to take vitamins and return to the office in 2 months. We have settled the indemity portion of this claim and we are only paying for medical. Will continue to monitor the medical condition. Will review file again on 1-12-95. tsw.

10-12-94 Reviewed file. This claim was settled but the medical was left open. I have the office notes from Dr. Savage from 9-12-94. He has continued to have pain. X-rays done in the office today of lumbar spine and they revealed what appears to be a solid fusion and titanium cages in good position. He complains of a knot appearing on his righ side of his back after walking. It sounds like this could be muscles in his back. He is to walk 2 miles twice a day, continue off work. He will be seen again in 2 months. Will continue to monitor medical. The next appt should be around 11-12-94. Will review file again on 11-29-94. tsw.

9-13-94 Laurie from Dr. Savage's office called. The ee was seen yesterday. No work for 2 months. F/u 11-7-94. He still has pain as is to walk 2 miles twice a day. tsw.

7-12-94 Lori with Dr. Savage's office called and the ee was seen today and will be off work for 2 more months. tsw.

6-6-94 McAbee Medical in Decatur, AL called and the ee needs a hospital bed, ordered by dr Savage for 10 to 12 months. The rental is $125.44 per month and the purchase is $1442.60. I will rent the bed for 10 months and then see if he needs it any longer. Per John they will allow me to put 80% of the rental paid toward a purchase. 205-351-7747. tsw.

5-12-94 The ee will have an anterior lumbar interbody fusion at L4-5 and L5-S1. This will be done by dr Savage on 5-19-94. The MRI revealed a solid fuison at L4-5 and L5-sl with degeneration of these two discs. The lumbar discogram revealed internal derangement of the disc at L4-5 and L5-sl. This was abnormal and produced the same pain at L4-5 and similar pain at L5-sl. There is a 70 to 75% chance of helping to decrease the pain. I have authorized this surgery. tsw.

5-10-94 Reviewed file ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Wylene called from Savage's office and he wants to do more surgery on the back next week. I told her that I will need something in writing from dr Savage stating why the need for the 2nd surgery and what the chances are for recovery. She said she would get this to me by 5-9-94 and I have not received yet. Will continue to monitor and will review the file again on 5-27-94. tsw.

5-3-94 Wylene called from Savage's office. The ee saw the dr on 5-2-94, they will do a discogram and CT scan on 5-6-94. He will have a psych eval on 5-3-94. This is to determine if he is capable of going

thru with any surgery and if surgery will help him.

4-20-94 Reviewed file. ████████████████████████████████
████████████████████████████ ee has been back to Savage and he
has another ruptured disc and this may require surgery. So the ee is

3-17-94 The ee saw dr Savage yesterday and the dr wants to do a discogram and CT scan on 4-1-94 at Outpatient Svs East. I have called WCCS today and given them the case. tsw.

3-2-94 Reviewed file. [redacted] I have received a letter from dr Sammons and he wants to refer to dr Savage for a 2nd opinion. He states that his x-rays show a solid fusion between L4 and S1. But the dr is uncertain of the source of the pain. Sometimes people can have discogenic pain even with a solid fusion. The treatment is an anterior body fusion. He will send to dr Savage for a 2nd opinion regarding this. I have authorized the visit. I have had good results in the past with Savage. [redacted] Will review file again on 3-16-94. tsw.