UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
97 SEP 22 PM 3:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

JERRY V. HILLIS, )
)
    Plaintiff, )
)
vs. ) Civil Action No. CV96-S-645-NE
)
J & J SOUTH CENTRAL, etc., )
GEORGIA PACIFIC CORPORATION, )
)
    Defendants. )

ENTERED
SEP 2 2 1997

## MEMORANDUM OPINION

This action is based upon the Americans with Disabilities Act.[1] It is an unusual case. Plaintiff, Jerry Hillis, was employed from 1986 until May 5, 1993 at Georgia Pacific Corporation's corrugated paper box manufacturing plant in Huntsville, Alabama: "J & J South Central." Two years prior to his last day of employment with defendants, Hillis sustained an on-the-job back injury. (Plaintiff's workers' compensation deposition no. 2 at 25-27.) After a brief period of convalescence and conservative medical treatment, Hillis returned to work, but thereafter performed only "light duty" assignments. (Id. at 30.) Even so, he re-injured his back on October 15, 1991, and did not work for the next nineteen months, during which defendants paid workers' compensation benefits and medical expenses. (Id.) Hillis' treatment during that period included back surgery in April of 1992. (Sammons deposition at 20.) His recovery was protracted. Hillis did not attain "maximum medical improvement" until April of the following year. (Id. at 11.) Even then, the surgeon imposed

---

[1] 42 U.S.C. §§ 12101 et seq.

58

restrictions that precluded Hillis from returning to work for defendants in his former, "First Helper" position.[2]

Hillis was terminated on May 3, 1993. "The reason for his termination was that he was unable to perform the essential functions of any plant job, with or without accommodation."[3]

Plaintiff does not dispute the legitimacy of his termination in this action. That was not true at the time, however. Shortly after his termination, plaintiff filed an action in state court seeking workers' compensation benefits, and, also claiming that his termination was wrongful.[4] (Buford affidavit exhibit C.) In addition, Local 501 of the United International Paperworkers Union submitted a grievance on plaintiff's behalf, asserting his termination was without just cause. (Buford affidavit ¶ 10.) The grievance was denied during the first three steps of a four step

---

[2]For example, plaintiff was not allowed to: perform repetitive bending; walk or stand for prolonged periods; lift more than twenty-five pounds on an occasional basis, or fifteen pounds frequently; and was limited in squatting and overhead working. (Sammons deposition at 12.) As a result of such restrictions, plaintiff could not return to his former, "First Helper" position, because that job required repetitive bending and lifting over fifty pounds. (Id. at 20.)

[3]"Defendants' Initial Statement of [Undisputed] Facts in Support of Summary Judgment," at 4 & ¶ 15, admitted by plaintiff in "Opponent's Responsive Submission in Response to Exhibit C of the Court's Order," at 3 & ¶ 15.

[4]The wrongful termination claim (ultimately dismissed on defendants' motion for summary judgment) was based on Alabama Code § 25-5-11.1, providing that:

> No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter or solely because the employee has filed a written notice of violation of safety rule pursuant to subdivision (c)(4) of Section 25-5-11.

2

process, and the union did not pursue the matter through the final stage. (*Id.*)

On March 19, 1994, during the pendency of his state court action,[5] plaintiff submitted to a second back surgery, performed by a different physician. (Plaintiff's deposition at 205.) That procedure apparently was more successful than the first because, on March 1, 19<u>95</u>, the surgeon gave Hillis a release to return to work, with no restrictions or limitations. (*Id.* at 114-15, 123-26.) That same day, plaintiff drove to defendants' Huntsville plant, seeking employment. Defendants' human resources manager, Sandy Mobley, refused to accept the release, and told plaintiff he had been terminated from his job. (*Id.* at 143-44.) Plaintiff asserts he then asked, "how do I get employed here," and Mobley directed him to submit an application through the state employment office.[6]

Three months later (on May 31, 1995), plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. (Buford affidavit exhibit B at 4.) Apparently, the alleged discrimination did not diminish plaintiff's desire to work for defendants, because Hillis returned to the plant on March 1, 19<u>96</u>, and again presented a release to return to work. (Plaintiff's deposition at 177-78.) That request for employment also was

---

[5]The state action was settled on June 22, 1994.

[6]Plaintiff admits asking about how to become employed, but denies he was directed to submit a new application. *Compare* "Opponent's Responsive Submission in Response to Exhibit C of the Court's Order," at 5 ¶ 55, *with* Plaintiff's affidavit ¶ 8.

3

denied, and this action was filed ten days later, on March 11, 1996.[7]

The case now is before the court on defendants' motion for summary judgment. The parties' positions divide essentially along the line separating defendants' contention that plaintiff sought reinstatement to his former position *versus* plaintiff's assertion that he applied for employment in any capacity, but defendants' managers discriminatorily refused to hire him because they regarded him as disabled.

Upon consideration of the motion, pleadings, briefs, and evidentiary submissions, this court determines that it does not matter which point of view is adopted. Summary judgment is due to be granted in either event.

## I. TIMELINESS OF PLAINTIFF'S CLAIMS

### A. Plaintiff's Claims for Reinstatement

Defendants argue that this action merely is a challenge to the propriety of plaintiff's termination on May 3, 1993. Thus, defendants allege plaintiff's claim is time-barred, because he failed to file a charge of discrimination within 180 days of his termination.[8] Defendants rely upon the Eleventh Circuit's

---

[7]This action is timely, because Hillis received a notice of right to sue from the EEOC on December 15, 1996, and filed his complaint within 90 days. *See* 42 U.S.C. 2000e-5(f).

[8]The ADA incorporates the administrative prerequisites of Title VII (42 U.S.C. § 12117 (a)), one of which is that a charge of discrimination must be filed within 180 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e5(e)(1). Plaintiff was terminated on May 3, 1993, but did not file a charge with the EEOC until May 31, 1995.

4

statement in *Burnam v. Amoco Container Company*, 755 F.2d 893 (11th Cir. 1985), that:

> a failure to rehire subsequent to an allegedly discriminatory firing, absent a new and discrete act of discrimination in the refusal to rehire itself, cannot resurrect the old discriminatory act. ... Otherwise, a potential plaintiff could always circumvent the limitations by reapplying for employment. A simple request for reinstatement 'seeks to redress the original termination.'

*Id.* at 894 (quoting *Collins v. United Air Lines, Inc.*, 514 F.2d 594, 596 (9th Cir. 1996)).

Indeed, a distinction must be drawn between a "simple request for reinstatement" and a "discriminatory refusal to hire."

> A discharged employee who seeks to be reinstated is really litigating the unfairness of the original discharge because only if the original discharge was discriminatory is he entitled to be reinstated as if he had never ceased working for the employer. The word reinstatement must be employed in this connection as the equivalent of uninterrupted employment. ... The concept of a discriminatory refusal to hire is a different concept. If a person — whether a former employee or not — applies for employment and discriminatorily is refused employment ..., the employer has committed a separate and distinct unfair ... practice.

*Collins v. United Air Lines, Inc.*, 514 F.2d at 596-97 (quoting *NLRB v. Textile Machine Works*, 214 F.2d 929, 932 (3d Cir. 1954)).

By means of a self-serving affidavit and careful arguments of counsel, Jerry V. Hillis attempts to characterize his claim as one for discriminatory refusal to hire. Even so, the following factors demonstrate he seeks "the equivalent of uninterrupted employment."

5

1. **Plaintiff's EEOC materials**

On April 21, 1995, plaintiff gave the following responses to an intake questionnaire supplied by the Equal Opportunity Commission:

> IV. What specific action(s) did your employer take against you?
>
> Answer: <u>Terminated</u> after being injury [sic] on the job.
>
> . . .
>
> X. Why do you believe you have been discriminated against because of the reason(s) checked in Section V? State how you have been treated differently . . . .
>
> Answer: I was fired because I was hurt and it required 3 operation [sic] to fix the doctor has given me a return to work paper with NO restriction but the company <u>refuses to give me my job</u>.

(Buford affidavit exhibit B at 2-3(emphasis supplied).)

On May 31, 1995, plaintiff executed a charge of discrimination which stated in full:

> Dr. Perry Savage released me to <u>come back to work</u> on March 1, 1995 and J & J South refused to allow me to <u>come back</u>.

(*Id.* at 4 (emphasis supplied).)

Plaintiff filed an amended charge of discrimination on July 14, 1995, which stated:

> Since March 1995, and on a continuing basis, the above-named employer has refused to <u>reinstate</u> me to my job as 1st helper in the Die Cut Department. I had been employed since 1986. I was deemed medically disqualified for employment in 1993, due to an on-the-job injury. I had three operations, but I was released by a doctor to <u>return to work</u> on March 1, 1995, with no restrictions.
>
> No reason was given for the employer's refusal to <u>reinstate</u> me to my position. When my workman's

6

compensation case was settled, the company tried to get me to resign, however, I refused.

I believe I have been discriminated against on the basis that my employer perceives me as being disabled, in violation of the Americans with Disabilities Act.

(*Id.* at 5 (emphasis supplied).)

### 2. Plaintiff's complaint

Plaintiff's complaint alleged that he and the defendants "agreed that if the restrictions suffered by the plaintiff were removed, the plaintiff would be <u>returned to work</u> with the defendant corporation." (Complaint ¶ 10 (emphasis supplied).[9]) Plaintiff further alleged:

> Dr. Perry Savage released the plaintiff to <u>return back to work</u> with the Corporations. The Plaintiff went to the Corporations business location in Huntsville, Madison County, Alabama to <u>return to work</u> on or about March 1, 1995. The defendant Corporations by and through its agent or servent [sic] or employees refused to allow the plaintiff to <u>return to work</u> at that time. Dr. Perry Savage has removed all restrictions that had previously been placed on the plaintiff which precluded him from working for the defendant Corporations. The defendant Corporations continued to take the position that the plaintiff suffered a disability which precluded him from working for the Corporations with or without reasonable accommodation.

(*Id.* ¶ 11 (emphasis supplied).) The complaint also alleged "defendant Corporations have refused to make reasonable accommodations to the Plaintiff by refusing to allow him to <u>return to work</u> on or about March 1, 1995." (*Id.* ¶ 14 (emphasis supplied).) Finally, in his prayer for relief, plaintiff requested

---

[9]During negotiation of the settlement of his state workers' compensation action, plaintiff rejected language that would have precluded future employment with defendants. Rejection of such a proposal does not translate to an "agreement" of future employment, however.

7

he "be awarded the back pay he would have earned, with related monetary benefits and interest thereon, had he been <u>reinstated</u> to his employment with the Corporations as of on or about March 1, 1995." (*Id.* at 3 (emphasis supplied).)

### 3. Deposition testimony

During his deposition, plaintiff testified as follows:

Q. When you went to talk with Sandy Mobley in March 1995, <u>were you attempting to apply for employment, or were you seeking reinstatement</u>?

A. Seeking <u>reinstatement</u>.

Q. And what job did you expect or want Georgia-Pacific to give you as a result of coming to talk to Sandy Mobley that day?

A. <u>I expected my old job back</u>.

Q. Well, you had several. Which one did you expect? The one you last had?

A. The last — <u>my last job</u>.

Q. Being first helper?

A. <u>Being first helper</u>.

(Plaintiff's deposition at 149 (emphasis supplied).)

### 4. Refusal to sign original workers' compensation settlement

Plaintiff relies too heavily on his refusal to sign a settlement proposal that would have foreclosed any future employment with defendants.[10] His refusal to sign simply demonstrates his belief that defendants owed him a position, if and when he recovered from his on-the-job injury. In that regard, plaintiff testified as follows during deposition:

---

[10]See note 9 *supra*.

8

> Q. Well, what relevance does this [refusal to sign future work provision] have to your disability case if you say the company tried to get you to resign? Do you think that was discriminatory for some reason?
>
> A. I think that was — I think that's telling me that they knew that I had a legal right to get my job back.
>
> . . .
>
> Q. You don't think the company has a right to try to prevent these [ADA actions] from occurring after they settle workers' comp cases?
>
> A. I think they should fulfill their obligation, and when somebody gets hurt on the job, they should furnish them their job when they are able to return to work.

(Plaintiff's deposition at 199-201.)

### 5. Belief that he retained seniority

Plaintiff also believed he was entitled to full seniority upon reemployment with defendant: a belief which reinforces the argument that plaintiff sought continuation of his former employment status, rather than a new position.

> Q. You were aware as of March 1, 1995, that you had no seniority at the plant, were you not, sir?
>
> A. I wasn't aware.
>
> Q. You didn't know that you had lost your seniority when you were terminated from employment?
>
> A. That's correct.
>
> Q. Did you know whether the union contract provides that you lose your seniority if you're terminated from employment?
>
> A. To my understanding, I don't.
>
> Q. I don't understand that answer. To your understanding, you don't know whether the union contract provides that, or do you know whether the union contact provides that?

9

> A.  I'm thinking that from what the Union has told me that if
> I <u>reinstated</u>, it would be back to full pay and benefits
> with no loss of seniority.

(Plaintiff's deposition at 160-61 (emphasis supplied).)

### 6.  Opposition to summary judgment

In his opposition brief, plaintiff makes the following arguments:

> On March 1, 1995, Hillis attempted to <u>return to work</u> at
> GP after obtaining a release from his treating company
> physician to return to work.

(Plaintiff's brief at 14 (emphasis supplied).)

> Thus, not only was the original termination non-
> discriminatory, it was also foreseeable that Hillis might
> <u>return to employment</u> at GP.

(*Id.* at 15 (emphasis supplied).)

> Hillis' EEOC charge alleging a failure to rehire was
> timely filed in May of 1995, well within 180 days of
> March 1, 1995, the date of Hillis' release to return to
> work and the date of GP's <u>refusal to return Hillis to
> employment</u>.

(*Id.* at 16 (emphasis supplied).)

> Furthermore, the regulations implementing the ADA list
> <u>reassignment</u> to a vacant position as a reasonable
> accommodation.

(*Id.* at 17 (emphasis supplied).)

> The medical evidence in March of 1995, after successful
> back surgery, provides that Hillis has improved and that
> he can <u>return to work</u> in the general floor position at
> GP, which was available on March 1, 1995.

(*Id.* at 19-20 (emphasis supplied).)  Those statements also demonstrate plaintiff's belief that he was entitled to <u>continue</u> employment with defendants, rather than begin new employment.

10

7. **Plaintiff's affidavit opposing summary judgment**

In an affidavit submitted in opposition to summary judgment, plaintiff offered the following statement:

> My objective at the time that I went to the J & J South Central on March 1, 1995 was to be <u>reinstated to my old job</u>; however, I was willing to be <u>reinstated into any job</u> and advised Sandra Mobley of that fact. Ms. Sandra Mobley never told me that I had to make a new application with the Alabama State Employment Office.

(Plaintiff's affidavit ¶ 8 (emphasis supplied).) Such statements do not demonstrate that plaintiff applied for a new position with defendant. Rather, they merely confirm plaintiff's belief that he was entitled to <u>reinstatement</u> in <u>some</u> job, because he was injured while working for defendants.

B. **Statute of Limitations**

Plaintiff argues that his alleged request for "any job," and his statement "how do I get hired," demonstrate that he sought to be hired in a new position, rather than reinstated to his former position. The evidence outlined above clearly demonstrates, however, that plaintiff sought reinstatement to his former position. And, because plaintiff believes he is entitled to "the equivalent of uninterrupted employment," *Collins*, 514 F.2d at 594, he merely is seeking redress for his original termination. *Burnam v. Amoco Container Company*, 755 F.2d at 894; *Fronduti v. Trinity Industries, Inc.* 928 F.Supp. 1107, 1110-12 (M.D. Ala. 1996). That termination occurred on May 5, 1993, but plaintiff did not file a charge of discrimination until May 31, 1995, well beyond the 180 day limitation.

11

Plaintiff asserts in brief that a "new and discrete" act of discrimination occurred, because he was terminated as a result of an _actual_ disability, but his application for new employment was refused because of a _perception_ or _record_ of disability. Plaintiff stipulates that the basis for his termination was valid, but argues that the subsequent refusal to hire was discriminatory. The court refuses to accept that argument, because it would allow plaintiff to circumvent the statute of limitations by artful stipulation. Nevertheless, as set out below, plaintiff cannot prove that the alleged refusal to consider him for new employment was discriminatory.

## II.   DISCRIMINATORY REFUSAL TO HIRE

Plaintiff bears the burden of proving by a preponderance of the evidence that defendants discriminatorily refused to hire him because of a perceived disability or record of disability. That can be done either by direct or circumstantial evidence. When plaintiff's evidence is circumstantial in nature, however, the Supreme Court has developed a three stage framework for focusing the inquiry. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).[11]

---

[11]It is widely agreed that the burden-shifting analysis expressed in *McDonnell Douglas*, and its progeny, and applied in Title VII cases, is similarly followed in deciding cases brought under the ADA. *See Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996), cert. denied, __ U.S. __, 117

12

First, plaintiff must establish a *prima facie* case, which under the ADA requires proof that: (1) plaintiff has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination (*i.e.*, adverse employment action) because of his disability. *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 910(citing *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1132 (11th Cir. 1996) and *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996)). If plaintiff establishes a *prima facie* case, then at the second stage of analysis the burden of production shifts to defendants to rebut the presumption of intentional discrimination by articulating legitimate, nondiscriminatory reasons for the employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. If defendants do so, then in the final step of the inquiry plaintiff must have an opportunity to show by a preponderance of the evidence that defendants' stated reasons merely are pretexts for unlawful, discriminatory motives. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

A.  *Prima Facie* Case - Qualified Individual

In determining what constitutes a "qualified individual with a disability," the Eleventh Circuit has said:

> In adhering to the cardinal rule, we find the plain language of the ADA clearly demonstrates the intent of Congress to limit the scope of the Act to only job

---

S.Ct. 964 (1997)(implicitly using burden-shifting framework); *McNemar v. The Disney Store, Inc.*, 91 F.3d 610, 619 (3d Cir. 1996), *cert. denied*, __ U.S. __, 117 S.Ct. 958 (1997); *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 761 n.2 (5th Cir. 1996), *cert. denied*, __ U.S. __, 117 S.Ct. 958 (1997); *see also Johnson v. Boardman Petroleum, Inc.* 923 F. Supp. 1563 (S.D. Ga. 1996); *Lewis v. Zilog, Inc.*, 908 F. Supp. 931 (N.D. Ga. 1995).

13

applicants and current employees capable of performing essential functions of available jobs.

*Gonzales v. Garner Food Services, Inc.*, 89 F.3d 1523, 1528 (11th Cir. 1996)(former employee with AIDS could not sue for discriminatory limitation of health benefits). As discussed above, plaintiff is neither an employee nor an applicant. Rather, he is a <u>former employee</u> who believes he is entitled to <u>resume</u> employment with defendants solely because he was injured on the job. Thus, plaintiff cannot be a qualified individual with a disability, and defendants are entitled to summary judgment.

**B.  Legitimate Non-Discriminatory Reasons**

Even if this court assumes plaintiff has proven a *prima facie* case of discrimination, defendants articulated legitimate nondiscriminatory reasons, which plaintiff failed to rebut. To rebut defendants' stated reasons, plaintiff must:

> cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered "legitimate reasons were not what actually motivated its conduct," *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994) (citation omitted). The district court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Sheridan* [*v. E.I. DuPont De Nemours & Co.*], 100 F.3d 1072 ....

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (citations omitted).

14

SEP-22-1997 17:13  USDC HUNTSVILLE  205 551 0741  P.015/019

1. **Application for the job**

Defendants' first nondiscriminatory reason for refusing to rehire plaintiff is his failure to submit an application for employment. Plaintiff admits he did not complete an application for employment when he sought reinstatement. (Plaintiff's deposition at 150-51.) Furthermore, the only open position at that time was a "General Floor" position.[12] (John Smith deposition exhibit 15.[13]) Yet, all "General Floor" positions were filled by persons who submitted applications with defendants, or who were temporarily assigned by employment agencies.[14] (Tony Buford affidavit ¶ 5[15]; Jerry Seay deposition at 39-40.[16])

Plaintiff contends he was not required to submit a new application, because defendants retained his original 1986 application, and he asked Sandra Mobley "how do I get hired" in 1995. Plaintiff, however, presents no proof of other employees who were rehired without submitting new applications. Without such evidence, this court will not impose a duty on employers to

---

[12] New employees are usually placed in the "General Floor" position, where they perform various tasks around the plant, as needed. (Plaintiff's deposition at 103-04; Seay deposition at 34, 41, 43).

[13] Smith is an employment service manager for the Alabama State Employment Office.

[14] Plaintiff offers proof of one employee who was "hired off the street." (Seay deposition at 48.) There is no evidence indicating that employee did not complete an application when he came "off the street." Furthermore, that employee were hired into a position other than "General Floor." (*Id.*)

[15] Buford is the manager of defendants' Huntsville facility.

[16] Seay is the president of the Local 501 of the United International Paperworkers Union.

15

consider every former employee's verbal inquiry, when those employees simply express a general interest in re-employment. Plaintiff did not formally apply for employment, and summary judgment is appropriate.

2. **Refusal to rehire involuntarily terminated employees**

Defendants' Huntsville facility maintains a policy of refusing to rehire persons who are involuntarily terminated, unless reinstatement is in settlement of a union grievance or an arbitration award relating to the discharge. (Buford affidavit ¶ 12.) Plaintiff offers no proof to dispute that fact. Instead, he argues that defendants failed to articulate a "legitimate business interest" for the policy, and that it has the effect of discriminating against persons with disabilities. (Plaintiff's brief at 16-17.)

Plaintiff's "legitimate business interest" argument simply questions the wisdom of defendants' refusal to rehire involuntarily terminated employees. This court will not find defendants' policy pretextual on that basis, particularly where a reasonable employer would have legitimate reasons for not wanting to rehire involuntarily terminated employees.

"[C]ourts do not review the legitimacy per se of the employer's stated reason." I B. Lindemann & P. Grossman, *Employment Discrimination Law* 20 (3d Ed. 1996).

> [F]ederal courts do not sit to second-guess the business judgment of employers. Stated somewhat differently, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of

16

the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer.

*Combs v. Plantation Patterns*, 106 F.3d at 1543.

Furthermore, the mere fact that defendants' policy affects disabled persons does not "cast sufficient doubt upon [defendants'] proffered nondiscriminatory reasons." *Combs*, 106 F.3d at 1538. Defendants' policy treats all involuntarily terminated employees alike. "It is difficult to hold that a practice which affects applicants of all [classes] in the same manner is actually designed to conceal a ... discriminatory motive." *Brown v. American Honda Motor Company, Inc.*, 939 F.2d 946, 952 (11th Cir. 1991). There simply is no evidence defendants applied the policy in a discriminatory manner: therefore, summary judgment is appropriate.

### III. CONCLUSION

For the foregoing reasons the court concludes defendants' motion for summary judgment is due to be granted. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 22nd day of September, 1997.

                                               /s/ [signature]
                                      United States District Judge